Dennis QUALLS,
Plaintiff–Appellant/Cross–Respondent,

v.

ST. LOUIS SOUTHWESTERN RAIL-
WAY COMPANY,
Defendant–Respondent/Cross–Appellant.

No. 72683.

Supreme Court of Missouri,
En Banc.

Nov. 20, 1990.

G. Edward Moorman, St. Louis, for plain-tiff-appellant/cross-respondent.

John B. Gunn, Leslie G. Offergeld, St. Louis, for defendant-respondent/cross-appellant.

HOLSTEIN, Judge.

Plaintiff Dennis Qualls obtained a jury verdict on his claim against defendant St. Louis Southwestern Railway Company (the railroad) under the Federal Employers' Liability Act, 45 U.S.C.A. § 51, *et seq.* (West 1986) (FELA). Defendant filed a "post-trial motion" requesting the judgment be set aside and that judgment be entered for defendant or, alternatively, a new trial be granted. The trial court set aside the judgment and ordered a new trial. The parties filed cross-appeals. Following opinion by the Missouri Court of Appeals, Eastern District, this Court granted transfer. Affirmed.

I.

The trial court's basis for granting a new trial was error in the giving of an instruction, MAI 24.01 (1981). Plaintiff's solitary point on appeal is that the instruction given was not erroneous. Respondent's cross-appeal counters with a single point, apparent-

ly [1] claiming plaintiff failed to make a submissible FELA case because plaintiff's evidence established no duty toward plaintiff that was violated by defendant.

█ The granting of a new trial eliminated the adverse judgment against defendant from which it might have appealed. § 512.020, RSMo 1986; *Community Title Co. v. Roosevelt Federal Savings & Loan Ass'n*, 796 S.W.2d 369, 370 (Mo. banc 1990). Nevertheless, the cross-appellant's brief raised the issue of submissibility of plaintiff's case and the question must be addressed. *Id.* at 371. In determining whether plaintiff made a submissible FELA case, the Supreme Court views the evidence in a light most favorable to the jury's verdict and affords the prevailing party the benefit of all reasonable inferences that may be drawn from the evidence. *Melton v. Ill. Central Gulf R.R.*, 763 S.W.2d 321, 324 (Mo.App.1988).

## II.

Qualls was first employed as a laborer by the railroad in 1973 and continued in that employment until the injury that is the subject of this suit. On the morning of December 6, 1984, he was a member of a work crew assigned to work on a section of track. The crew was staying in a motel in Cape Girardeau. The weather was quite cold, with ice and snow on the ground. The crew was taken by bus to a point about a mile from where they were to work. From there Qualls and his fellow workers began walking along the railroad right-of-way and across a bridge toward the location where labor was to be performed. About one-tenth of a mile from where the crew disembarked from the bus, Qualls discovered he had left his hood on the bus. Qualls returned back across the bridge to retrieve his hood from the bus. He discovered the bus had departed. He turned again to walk toward the work site. At that point Qualls was alone and carrying a five- to ten-pound maul used for driving railroad spikes. As Qualls was crossing the bridge for the third time, he thought he heard the sound of a train whistle.

This particular bridge, or trestle, is what is referred to as an open-deck bridge. The tracks sit on the cross-ties. Between the cross-ties are spaces that are open to the ground several feet below. A single set of tracks traverses the length of the bridge. Although some bridges have walkways and handrails, this one was not so equipped. On that day, the bridge was particularly slippery because of freezing rain and snow, which had fallen the night before and continued to fall that morning. Co-workers of Qualls testified they had trouble crossing this particular bridge, apparently because of the combined effects of the open deck design, absence of handrails or walkways and the slippery conditions on the bridge. One co-worker slipped more than once while crossing the bridge but was uninjured. Another managed to get across by using his maul as a cane to provide additional support. No cinders or salt were used on the bridge and no one on the crew was assigned to remove ice or snow from the trestle.

As Qualls heard what he believed to be a train whistle, he turned. As he turned, he slipped and lost his balance. He fell onto the bridge, to his back and to one side. At the same time his feet were going through the cross-ties. To keep from falling from the bridge and to the ground some five to six feet below, Qualls held onto the bridge. He immediately experienced low back pain, which radiated into his legs. He got to his feet, proceeded to the place where the work was being performed, and reported the injury to his fellow employees and his foreman.

## III.

█ The railroad does not deny that it has a duty to provide plaintiff with a rea-

---

1. The point relied on in cross-appellant's brief asserts, "The trial court erred in finding there was a duty on the part of defendant to eliminate the natural conditions of ice and snow along a one-mile stretch in the open country." A diligent search of the record discloses that the trial court made no such finding, nor is such factual finding hypothesized in the trial court's instructions. If this Court relied on the statement of the point to justify review, it is doubtful that any further discussion would be necessary. Mo. Rules of Court 84.04(d).

sonably safe place to work or that if its negligence played any part, even the slightest part in producing plaintiff's injury, then a submissible case is made under FELA. *See Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957). It argues, however, that it may not be held liable for injuries sustained from the mere existence of ice and snow outside the yard limits.

■ The duty to provide a reasonably safe workplace contemplates that the employer will take "precautions commensurate with the dangers to be encountered in the circumstances" and the question of reasonableness depends "upon the danger attending the place or the machinery." *Britt v. Terminal R.R. Ass'n of St. Louis*, 311 S.W.2d 130, 133 (Mo.App.1958), quoting *Bailey v. Central Vermont Ry.*, 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943). The phrase "reasonably safe place to work" is a term of relative application, which requires the employer to eliminate those dangers that could be removed by the exercise of reasonable care by the employer. *Raudenbush v. Baltimore & O.R.R.*, 160 F.2d 363, 366 (3rd Cir.1947). However, the employer is not an insurer of his employee's safety. *Hightower v. Edwards*, 445 S.W.2d 273, 275 (Mo. banc 1969).

From the above general principles, more specific rules have developed relating to the employer's duty to keep the workplace free of ice and snow. Within a railroad switch yard or terminal area where cars and locomotives are being moved and employees must move with celerity to perform their duties, the employer, within its reasonable ability to do so, is "required to exercise reasonable care to prevent an accumulation of snow and ice in such quantity and location as would constitute a menace to the employees in the performance of their work." *Raudenbush*, 160 F.2d at 366; *see also Britt v. Terminal R.R. Ass'n, supra*, and *Zibung v. Union Pac. R.R.*, 776 S.W.2d 4 (Mo. banc 1989).

Outside the switch yard or terminal area the duty of the employer to keep the workplace free of ice and snow is somewhat different. In the open countryside traversed by trains and the railroad right-of-way, the railroad has little control over the vagaries of weather and climatic conditions. Thus, there is no duty to protect employees from "injuring resulting from the mere existence of ice or snow and disconnected from other circumstances." *Raudenbush*, 160 F.2d at 366; *Banta v. Union Pac. R.R.*, 362 Mo. 421, 242 S.W.2d 34, 39 (1951).

Applying the above principles to the case at hand, it is apparent that the existence of ice and snow was not the only circumstance playing a role in the fall and injury that plaintiff sustained. Given all the circumstances, it is impossible to say with confidence that the employer could not foresee the menace faced by employees whose assignment required them to walk on foot across an ice and snow-covered open-deck trestle that had no walkways or handrails, or that the employer had no reasonable ability to take precautions to remove the dangers inherent in crossing the bridge by providing instruments or utensils, such as salt or cinders, to remove the ice and snow. *See McGivern v. Northern Pac. Ry.*, 132 F.2d 213, 217–18 (8th Cir.1942). Under the totality of the connected circumstances and viewing the evidence favorably to plaintiff, a reasonable person could conclude that the railroad had failed to provide Qualls with a reasonably safe workplace. Plaintiff made a submissible case.

### IV.

■ The plaintiff's single point on appeal is that the trial court erred in granting a new trial. The basis of granting the new trial was a determination by the trial court that plaintiff's verdict directing instruction was erroneous. The instruction, designated as "Instruction No. 7," was patterned after MAI 24.01. It stated,

Your verdict must be for plaintiff if you believe:

First, defendant failed to provide reasonably safe conditions for work, and

Second, defendant in the respect submitted in paragraph first was negligent, and

Third, such negligence resulted in whole or in part in injury to plaintiff.

Unless you believe plaintiff is not entitled to recover by reason of Instruction No. 8.

The Notes on Use under MAI 24.01 state: In the event plaintiff submits some act of negligence, constructive knowledge of which is not chargeable to the railroad, there shall be submitted in addition a paragraph providing "defendant knew or by using ordinary care should have known of such condition, and that such condition was reasonably likely to cause substantial harm." This paragraph should be inserted between existing paragraphs Third and Fourth and the paragraph should be renumbered accordingly. Implicit in the Notes on Use explanation as to when the additional paragraph should be used is the idea that the judge must decide whether the plaintiff has presented sufficient evidence to justify not submitting the issue to the jury. If the judge decides the plaintiff has shown defendant had actual knowledge of the negligently produced condition, the additional paragraph is not required. *Foltz v. Burlington N.R.R.*, 689 S.W.2d 710, 715 (Mo.App.1985).

In the case at hand, one of the factors making up the allegedly unsafe condition was the accumulation of ice and snow. There was some disagreement in the testimony as to the extent of the accumulation of ice and snow and whether the bridge was slippery. Under such circumstances there was an issue of fact as to defendant's actual or imputed knowledge of the condition. Defendant's knowledge of the condition is an essential element of plaintiff's case that must be submitted to the jury. The trial court did not commit error in finding that plaintiff's verdict directing instruction was improper and in granting a new trial.

The Notes on Use direct that the paragraph "be inserted between existing paragraphs Third and Fourth and the paragraph renumbered accordingly." Placing the paragraph submitting the question of whether the employer knew of unsafe conditions after the paragraph submitting the

issue of whether the employer failed to provide reasonably safe conditions for work is illogical.

On retrial in this case and in all cases tried after publication of this opinion in the *Southwestern Reporter* where the issue of an employer's knowledge of an unsafe condition must be submitted, the additional paragraph shall be inserted before paragraph Second of MAI 3d 24.01. The paragraph should provide "defendant knew or by the exercise of reasonable care could have known of unsafe conditions and that such conditions were reasonably likely to cause substantial harm." The directions in the Notes on Use are to be disregarded to the extent that they are inconsistent.

Accordingly, the order setting aside the judgment and granting a new trial is affirmed.

BLACKMAR, C.J., ROBERTSON, RENDLEN, HIGGINS and COVINGTON, JJ., and SEILER, Senior Judge, concur.

BILLINGS, J., not sitting.